UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

JOSIE T.,

                Plaintiff,

        v.                              **DECISION AND ORDER**

                                            21-CV-6368S

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

_____

      1.     Plaintiff Josie T.[1] brings this action pursuant to the Social Security Act ("the Act"), seeking review of the final decision of the Commissioner of Social Security that denied her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Act.  (Docket No. 1.)  This Court has jurisdiction over this action under 42 U.S.C. § 405(g).

      2.     Plaintiff protectively filed her applications with the Social Security Administration on March 23, 2019.  Plaintiff alleged disability beginning on April 1, 2017, due to cervical degenerative disc disease status post anterior cervical discectomy and fusion surgery, subsequent cervical vertebra fracture, lumbar degenerative disc disease, right knee degenerative joint disease and status post February 2020 total knee right knee replacement, right shoulder tendinitis, and obesity.  Plaintiff's applications were denied, and she thereafter requested a hearing before an administrative law judge ("ALJ").

---

[1] In accordance with this Court's Standing Order of November 18, 2020, and consistent with guidance from the Committee on Court Administration and Case Management of the Judicial Conference of the United States, this Decision and Order will identify Plaintiff by first name and last initial.

3.      On May 14, 2020, ALJ Andrew Soltes, Jr., held a teleconference hearing (due to COVID-19) at which Plaintiff—represented by counsel—and Vocational Expert Susan Gaudet appeared and testified.  (R.[2] at 15, 36-75.)  At the time of the hearing, Plaintiff was 41 years old on the claimed onset date.  She has a limited 11th grade education.  (R. at 27, 15.)  Plaintiff worked as a receptionist, cleaner, and housekeeper but did not work long enough in any of these jobs to make them past relevant work. Plaintiff did not engage in substantial gainful activity since the April 1, 2017, onset date (R. at 17).

4.      The ALJ considered the case *de novo* and, on June 3, 2020, issued a written decision denying Plaintiff's applications for benefits.  After the Appeals Council denied Plaintiff's request to review the ALJ's decision, she filed the current action, challenging the Commissioner's final decision.[3]  (Docket No. 1.)

5.      Both parties moved for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure.  (Docket Nos. 8, 9.)  Plaintiff filed a response on April 25, 2022 (Docket No. 10), at which time this Court took the Motions under advisement without oral argument.  For the reasons that follow, Plaintiff's Motion (Docket No. 8) is **denied**, and Defendant's Motion (Docket No. 9) is **granted**.

6.      A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled.  See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Commissioner's determination will be reversed only if it is not supported by substantial evidence or there

---

[2]Citations to the underlying administrative record are designated as "R."

[3]The ALJ's June 3, 2020, decision became the Commissioner's final decision on this matter when the Appeals Council denied Plaintiff's request for review.

has been a legal error.  See Grey v. Heckler, 721 F.2d 41, 46 (2d Cir. 1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir. 1979).  Substantial evidence is that which amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 26 L.Ed.2d 842 (1971).  Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld.  See Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982).

7.      "To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight."  Williams ex rel. Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]."  Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992).  In other words, this Court must afford the Commissioner's determination considerable deference and will not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review."  Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir. 1984).

8.      The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled under the Act.  See 20 C.F.R. §§ 404.1520, 416.920.  The Supreme Court of the United States recognized the validity of this analysis in Bowen v. Yuckert, and it remains the proper approach for analyzing

3

whether a claimant is disabled.  482 U.S. 137, 140-42, 107 S.Ct. 2287, 96 L.Ed.2d 119

(1987).

9.      The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is
> currently engaged in substantial gainful activity.  If [s]he is not,
> the [Commissioner] next considers whether the claimant has
> a "severe impairment" which significantly limits [her] physical
> or mental ability to do basic work activities.  If the claimant
> suffers such an impairment, the third inquiry is whether, based
> solely on medical evidence, the claimant has an impairment
> which is listed in Appendix 1 of the regulations.  If the claimant
> has such an impairment, the [Commissioner] will consider
> [her] disabled without considering vocational factors such as
> age, education, and work experience; the [Commissioner]
> presumes that a claimant who is afflicted with a "listed"
> impairment is unable to perform substantial gainful activity.
> Assuming the claimant does not have a listed impairment, the
> fourth inquiry is whether, despite the claimant's severe
> impairment, [s]he has the residual functional capacity to
> perform [her] past work.  Finally, if the claimant is unable to
> perform [her] past work, the [Commissioner] then determines
> whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982) (per curiam) (quotations in original);

see also 20 C.F.R. § 404.1520; Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir. 1999).

10.     Although the claimant has the burden of proof on the first four steps, the

Commissioner has the burden of proof on the fifth and final step.  See Yuckert, supra,

482 U.S. at 146 n.5; Ferraris v. Heckler, 728 F.2d 582, 584 (2d Cir. 1984).  The final step

is divided into two parts.  First, the Commissioner must assess the claimant's job

qualifications by considering her physical ability, age, education, and work experience.

Second, the Commissioner must determine whether jobs exist in the national economy

that a person having the claimant's qualifications could perform.  See 42 U.S.C.

§ 423(d)(2)(A); 20 C.F.R. § 404.1520(f); see also Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

11.     The ALJ analyzed Plaintiff's claim for benefits under the process set forth above.  At Step One, the ALJ found that Plaintiff has not engaged in substantial gainful activity since the April 1, 2017, onset date.  (R. at 17.)  At Step Two, the ALJ found that Plaintiff has the following severe impairments:  cervical degenerative disc disease status post anterior cervical discectomy and fusion surgery, subsequent cervical vertebra fracture, lumbar degenerative disc disease, right knee degenerative joint disease and status post February 2020 total knee right knee replacement, right shoulder tendinitis, and obesity.  Id. at 18.  At Step Three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals any impairment(s) listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  Id.

12.     Next, the ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform sedentary work, except Plaintiff requires the ability to alternate between sitting and standing at will but must remain on-task during the sit/stand period; can frequently finger and handle; can occasionally overhead reach but frequently reach in all other directions; occasionally stoop and crouch; never kneel, crawl, work at unprotected heights, or climb ladders, ropes, or scaffolds; and should avoid the use of heavy machinery as well as motor vehicles for work purposes (R. at 20).

13.     At Step Four, the ALJ found Plaintiff did not have past relevant work because Plaintiff did not earn the requisite amount to qualify as "relevant" work.  (R. at 27.)  At Step Five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform.  (R. at 28-29.)  The ALJ asked the

Vocational Expert hypotheticals based upon the age, education, and employment history of Plaintiff.  The Expert concludes that a similar hypothetical claimant could work as a food and beverage order clerk, a sedentary position (R. at 28-29).  The Expert observed that the Dictionary of Occupational Title (or "DOT") does not make a distinction between the ability to reach overhead or to reach in other directions but the Expert found that a hypothetical claimant could perform as a food and beverage order clerk based upon the Expert's professional knowledge, experience, education, and job analysis (R. at 28, 72-73).  Although this was the only position opined, the expert found 13,000 positions nationally for that job (R. at 28).  Accordingly, the ALJ found that Plaintiff is not disabled. (R. at 29.)

14.    Plaintiff argues that the RFC determination is not supported by substantial evidence because the ALJ failed to properly evaluate a doctor's opinion, resulting in the RFC being unsupported by substantial evidence.  Furthermore, the ALJ relied upon stale medical opinion (before total right knee replacement) and the ALJ's own opinion in finding the RFC.  Plaintiff also faults the Vocational Expert's opinion for being inconsistent with the Dictionary of Occupational Titles and the ALJ for missing or properly addressing and resolving this conflict.  For the reasons that follow, these arguments are unavailing.

15.    Under the Social Security standards applicable for Titles II and XVI applications after March 2017 effective for evaluating medical evidence, the agency considers the persuasiveness of a medical opinion, 20 C.F.R. §§ 404.1520c(a), 416.920c(a).  The agency considers the supportability and consistency of the opinions, id. §§ 404.1520c(c)(1), (2), 416.920c(c)(1), as the most important factors, id. §§ 404.1520c(b)(2), 416.920c(b)(2).  The ALJ must explain his approach with respect to

supportability and consistency when considering a medical opinion, Melissa F. v. Comm'r, No. 20CV1363, 2021 WL 3887256, at *3 (W.D.N.Y. Aug. 31, 2021) (Carter, Mag. J.) (citing 20 C.F.R. §§ 404.1520c(b), 416.920c(b)).  The more consistent a medical opinion is with the rest of the evidence from other medical and nonmedical sources, the more persuasive the opinion will be, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).  The ALJ, however, is not required to articulate how each medical opinion is considered, 20 C.F.R. §§ 404.1520c(b)(1), 416.920c(b)(1).

16.     Under these post-March 2017 regulations, supportability is defined "the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be," e.g., 20 C.F.R. § 404.1520c(c)(1).  Consistency defined in the new regulations is "the more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be," id. § 404.1520c(c)(2).

17.     First, Plaintiff objects to the ALJ's assessment of the opinion of Dr. Clifford Ameduri, Plaintiff's treating medical and rehabilitation specialist from Rochester Brain & Spine Group PPC (R. at 622-30, 19, 26-27; Docket No. 8, Pl. Memo. at 1, 15-22; see also Docket No. 10, Pl. Reply Memo. at 1).  Plaintiff complains that the ALJ did not properly evaluate the supportability and consistency factors of Dr. Ameduri's opinion (Docket No. 8, Pl. Memo. at 18).

7

18.     On August 8, 2018, Dr. Ameduri opined that Plaintiff's pain would limit her work, her concentration, persistence, pace, and social relationships (R. at 630, 622-28, 19).  Dr. Ameduri opined that Plaintiff could occasionally lift or carry 0 to 10 pounds, sit for 8 hours in intervals of 2 hours, stand for 1 hour, and walk for 2 hours, in intervals of 30 minutes during an 8-hour workday (R. at 622-23, 27; Docket No. 9, Def. Memo. at 15). Dr. Ameduri found that Plaintiff can sit for 1 hour without interruption, she needs to stand and walk between periods of sitting and needs to stand or walk for 1-5 minutes between sitting (R. at 624).  The ALJ, however, found that Dr. Ameduri opined that Plaintiff could sit for only one-minute intervals, concluding that it contradicted with sit/stand/walk assessment (R. at 27).

19.     Dr. Ameduri then found that Plaintiff could never climb ladders, balance, stoop, kneel, crouch, and crawl but could occasionally climb stairs (R. at 626).

20.     Dr. Ameduri also believed that Plaintiff would have absences that would impact her productivity 20-25% due to her pain (R. at 630, 19).

21.     The ALJ, however, found Dr. Ameduri's assessment was "overall non-persuasive" because his opinion was based upon Plaintiff's subjective complaints (R. at 26, 19).  While the doctor's opinion was consistent the medical record (save functional assessments of distractibility, lack of focus, and poor concentration, R. at 19) and supported Plaintiff's ability to perform sedentary work, the ALJ rejected Dr. Ameduri's finding that Plaintiff lacked the capacity for most postural activities because the doctor had contradictory assessments for general movement, ambulation, sitting, and standing that was not supported by the record (R. at 27).  The ALJ noted that Dr. Ameduri's opinion also was internally inconsistent, resting only upon Plaintiff's subjective pain complaints.

The ALJ then found that Plaintiff's pain complaints were undercut by conflicting reports Plaintiff provided to her neurosurgical and orthopedic specialists.  (R. at 27.)

22.     Defendant Commissioner generally contends that the RFC was supported by substantial evidence (Docket No. 9, Def. Memo. at 7-19).  Defendant observes that portions of Dr. Ameduri's assessment are consistent with sedentary work (id. at 15). Defendant emphasizes the internal inconsistency for postural limitations to conclude that Dr. Ameduri's opinion was unpersuasive (id. at 15-16).

23.     Reviewing Dr. Ameduri's assessment and the ALJ's decision, this Court cannot discern the internal inconsistency within the doctor's opinion.   This postural inconsistency appears to arise from the ALJ misreading Dr. Ameduri's opinion that Plaintiff needed 1-hour intervals (R. at 26; see also Docket No. 8, Pl. Memo. at 7 (summarizing Dr. Ameduri's opinion)), finding instead that she needed 1-minute intervals, from prolonged sitting (R. at 624; see also Docket No. 9, Def. Memo. at 15).  Dr. Ameduri did find, however, that Plaintiff could sit for 2 hours without interruption (R. at 623) or sit 1 hour without interruption (R. at 624) but this inconsistency is not decisive.

24.     As for consistency with the medical record, Plaintiff points to treatment findings that her antalgic gait, decreased strength, diminishing sensory findings, and limited range of motion of her neck and shoulder support postural limitations found by Dr. Ameduri (Docket No. 8, Pl. Memo. at 19, citing R. at 655-58, 677-700, 713-33 (Rochester Brain & Spine), 837-39, 874-79, 915-25 (Rochester Brain & Spine)).

25.     The ALJ, however, read these same longitudinal findings as undercutting Dr. Ameduri's opinion (R. at 27).

26.     This Court in judicial review is not in the position to reweigh the consistency of Dr. Ameduri's assessment with the rest of the medical record.

27.     As for supportability, the ALJ generally found Dr. Ameduri's opinion of sedentary work was supported but not for positional limitations (R. at 27) based (as noted above) on a possible misreading of the doctor's sitting, standing, and walking assessments.

28.     Nevertheless, Plaintiff has not shown medical evidence that her condition was worse than being able to perform sedentary work.  Even if the ALJ erred in determining the supportability or consistency of Dr. Ameduri's opinion the medical record does now show more severe impairments that preclude sedentary work.

29.     Next, Plaintiff claims that the ALJ relied upon stale medical opinions because the opinions predate her total right knee replacement in February 2020 (Docket No. 8, Pl. Memo. at 22-26, 23 (citing medical opinions in record before February 2020); R. at 24; see Docket No. 10, Pl. Reply Memo. at 2-3).  Plaintiff includes these now stale opinions the treatment record from the February 2020 knee replacement surgery (Docket No. 8, Pl. Memo. at 23, citing R. at 948-51).

30.     The ALJ noted Plaintiff had more significant treatment for her right knee, leading to its total replacement in 2020 but observed that this was not consistent with longitudinal clinical findings supporting the alleged functional restrictions to the extent Plaintiff testified to (R. at 24).

31.     Plaintiff concludes that the ALJ rested on his own lay opinion in rejecting more limiting opinions of Drs. Harbinder Toor and Ameduri while assessing greater limitations than found by Dr. Susan Dantoni, state agency Drs. A. Saeed and

S. Padmaraju (Docket No. 8, Pl. Memo. at 23; <u>see also</u> Docket No. 10, Pl. Reply Memo. at 2; <u>cf.</u> R. at 20-27).

32.    Commissioner responds that the ALJ evaluated the record as a whole and need not adopt a particular medical opinion (Docket No. 9, Def. Memo. at 8).  The RFC finding is an administrative not a medical finding (<u>id.</u> at 9, citing cases).  The ALJ has discretion to weigh conflicting evidence (<u>id.</u>), <u>see</u> <u>Veino v. Barnhart</u>, 312 F.3d 578, 588 (2d Cir. 2002).

33.    Evaluating the opinions of Dr. Dantoni and state agency doctors, Commissioner found that these opinions were internally consistent as well as were consistent with other evidence and Plaintiff's treatment notes (<u>id.</u> at 11; R. at 26).

34.    Commissioner denies that the opinions of Dr. Dantoni and the state agency doctors were stale because they were rendered during the relevant period (Docket No. 9, Def. Memo. at 13, <u>see</u> <u>Andrews v. Berryhill</u>, No. 17CV6368, 2018 WL 2088064, at *3 (W.D.N.Y. May 4, 2018) (Telesca, J.)).  Further, the ALJ considered deterioration in Plaintiff's right knee until she had replacement surgery (<u>id.</u>).

35.    Commissioner argues that the ALJ elected to find additional limitations than those noted by the doctors but short of concluding disability.  Commissioner contends that Plaintiff's condition did not deteriorate to the extent found by Drs. Dantoni, Saeed, or Padmaraju.  (<u>Id.</u>)

36.    Plaintiff replies that the ALJ's assessment of limitations required a basis in substantial evidence (Docket No. 10, Pl. Reply Memo. at 2).

37.    Commissioner is correct that the ALJ's reliance upon pre-replacement surgery medical opinions were not stale since these opinions were rendered during the

relevant period, Andrews, supra, 2018 WL 2088064, at *3.  Furthermore, the ALJ factored in Plaintiff's knee deterioration leading to the replacement surgery (R. at 26) in finding the physical RFC.  Plaintiff's Motion for Judgment (Docket No. 8) on this ground is denied.

38.     Plaintiff next raises the inconsistency between the Vocational Expert's opinion and the DOT for the job of food and beverage order clerk (Docket No. 8, Pl. Memo. at 27-30; Docket No. 10, Pl. Reply Memo. at 3-4; R. 28-29).  She argues that the ALJ did not resolve the conflict between the Expert's opinion and the DOT (Docket No. 8, Pl. Memo. at 28, 29; Docket No. 10, Pl. Reply Memo. at 3-4).

39.     The ALJ assessed Plaintiff with a sedentary RFC including the ability to reach overhead occasionally and frequently reach in all other directions (R. at 20).  Posed with these limitations in hypotheticals, the Vocational Expert concluded that the only position applicable is food and beverage order clerk (R. at 71-73,  28).

40.     The job of food and beverage order clerk as defined in the DOT, however, requires frequent reaching (Docket No. 8, Pl. Memo. at 27, citing DOT 209.567-014). "Reaching" is defined in the Social Security Program Policy Statement as "extending the hands and arms in any direction," SSR 85-15, 1985 WL 56857, at *7 (Jan. 1, 1985), Lockwood v. Comm'r, 914 F.3d 87, 92 (2d Cir. 2019) (Docket No. 8, Pl. Memo. at 28; see Docket No. 9, Def. Memo. at 20).

41.     With the finding in Plaintiff's RFC of occasional overhead reaching distinct from reaching in other directions, there is an inconsistency with the Vocational Expert's conclusion based upon that RFC that the hypothetical claimant could work as a food and beverage clerk, a job defined in the DOT to require frequent reaching generally, see DOT 209.567-014.

42.     The ALJ nevertheless accepted the Vocational Expert's explanation that, despite the DOT not distinguishing between overhead and other directional reaching, that a hypothetical claimant with Plaintiff's RFC could perform the duties of food and beverage clerk based upon the Expert's experience, education, and job analysis (R. at 28).

43.     Defendant Commissioner believes that the ALJ properly relied upon the Vocational Expert's opinion (Docket No. 9, Def. Memo. at 20-24).

44.     Where there is a conflict between the DOT and the Expert's opinion (as here, see Lockwood, supra, 914 F.3d at 92), the ALJ must elicit a reasonable explanation for the conflict, SSR 00-4p, 2000 WL 1898704 (Docket No. 9, Def. Memo. at 20; cf. Docket No. 8, Pl. Memo. at 29, quoting Lockwood, supra, 914 F.3d at 92).

45.     First, the ALJ here acknowledged the conflict between the Expert's opinion and the DOT and accepted the Expert's opinion (R. at 28).

46.     Second, the reasonable explanation resolving the conflict is the ALJ adopting the Expert's opinion based upon the Expert's professional expertise and knowledge, see Alisa O. v. Comm'r, No. 20CV564, 2021 WL 3861425, at *5 (W.D.N.Y. Aug. 30, 2021) (Geraci, J.) (id. at 22).

47.     Unlike Lockwood, supra, 914 F.3d at 92-94, the ALJ here is not merely taking the Expert's word for what the DOT provides to deny the existence of a conflict. Both the Expert and the ALJ in this case acknowledge the conflict because the DOT does not distinguish the direction of reaching (R. at 28, 72-73; Docket No. 9, Def. Memo. at 21-22).  That conflict was resolved by the ALJ's reliance upon the Expert's assessment of how jobs are performed, the type of analysis "that the Second Circuit in Lockwood indicated should have been done by the vocational expert," Alisa O., supra, 2021 WL

3861425, at *5, citing <u>Lockwood</u>, <u>supra</u>, 914 F.3d at 92-93.  As concluded in <u>Alisa O.</u>, remand is not required in this case, 2021 WL 3861425, at *5.

48.     Therefore, Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) on this ground is denied.


IT HEREBY IS ORDERED, that Plaintiff's Motion for Judgment on the Pleadings (Docket No. 8) is DENIED.

FURTHER, that Defendant's Motion for Judgment on the Pleadings (Docket No. 9) is GRANTED.

FURTHER, that the Clerk of Court is directed to CLOSE this case.

SO ORDERED.


Dated:        February 28, 2023
              Buffalo, New York


                              <u>s/William M. Skretny</u>
                              WILLIAM M. SKRETNY
                              United States District Judge